IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


CASSIE MICHELLE BACOCCINI,

       Plaintiff,

v.                                                                                                        14cv1115 WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

       Defendant.


**MEMORANDUM OPINION AND ORDER**

Cassie Bacoccini applied for disability insurance benefits and supplemental security income on March 31, 2011, alleging bipolar disorder beginning on October 1, 2009. (Administrative Record "AR" 61, 63, 187, 210, 224, 230.) After her application was denied at all administrative levels, she brought this proceeding for judicial review. The case is before me now on Bacoccini's Motion to Reverse and Remand to Agency for Rehearing, with Supporting Memorandum, a response filed by the Commissioner of the Social Security Administration ("SSA"), and Bacoccini's reply. (Docs. 21, 25, 26.) For the reasons explained below, I remand this case to the SSA for proceedings consistent with this opinion.

**STANDARD OF REVIEW**

When the Appeals Council denies a claimant's request for review, the Administrative Law Judge's ("ALJ") decision is the SSA's final decision. In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that she has done so . . . ." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2015). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step

2

and, in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to see if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing her past work, then she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to her past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Bacoccini is twenty-three years old. (AR 82.) She dropped out of high school in the ninth grade but was working on her GED at the time of the hearing. (*Id.*) Her employment history is limited to intermittent work at her family-owned bowling alley. (AR 200-205.) She lives with her husband, two biological children, and two step-children that stay with her at least four days a week. (AR 83.) She claims disability from bipolar disorder beginning on October 1, 2009. (AR 224, 230.) She later alleged additional disabling conditions, including depression, mood swings, and anxiety. (AR 276.)

I do not address everything in the record but rather target my factual discussion to the facts necessary to the disposition of this case.

Bacoccini has received continuous psychiatric care from treating psychiatrist Daniel Kerlinsky, M.D., since age seven. (AR 340.) Dr. Kerlinsky wrote an undated letter to the SSA in

3

which he summarized his findings and progress notes from 2008-2011. (AR 340-349.) In the letter, he recounted Bacoccini's early treatment issues: "[s]he presented with serious mood, behavioral, and social difficulties . . . ." (AR 340.) He summarized her recent treatment results: "[she] responded best to Abilify . . . for stabilization of the Bipolar Affective Disorder," but her "Oppositional Defiant Disorder and Autism spectrum condition have not been amenable to treatment." (*Id.*) And he concluded with an opinion about her interpersonal challenges in the workplace: "her ability to work outside of the home is very limited by her mood, impulsivity, and autistic features." (*Id.*)

The Commissioner referred Bacoccini to consultative psychologist Michael Emery, Ph.D., who examined her on August 17, 2011. (AR 350.) At the time of her visit, Bacoccini was pregnant with her second child and not taking Abilify. (*Id.*) Dr. Emery diagnosed her with "rapid cycling bipolar disorder or, also possible, borderline personality disorder." (AR 352.)

Later, two nonexamining state agency doctors reviewed Bacoccini's medical records. On August 26, 2011, Winston Brown, M.D., opined that Bacocinni had moderate limitations in some areas of functioning but was capable of performing "work where interpersonal contact is incidental to work performed, e.g. [sic] assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete (unskilled)." (AR 360.) In reaching this conclusion, Dr. Brown discounted Dr. Emery's "concerns about [Bacoccini's] ability to function in work" because Bacoccini had "good [Activities of Daily Living] and had a good presentation and [Mental Status Exam] performance [when examined by Dr. Emery]." (AR 361.) On November 17, 2011, Pauline Hightower, Psy.D, opined that "[a] review of all medical records supports decision reached that [Bacoccini is] capable of unskilled work as she does now at a bowling alley." (AR 109.)

**ALJ AND APPEALS COUNCIL'S DECISIONS**

The ALJ issued her decision on May 29, 2013. (AR 71.) At step one, she determined that Bacoccini had not engaged in substantial gainful activity since October 1, 2009. (AR 63.) At step two, she found that Bacoccini had the severe impairments of bipolar disorder, anxiety disorder, borderline personality disorder, and autism spectrum disorder. (*Id.*) At step three, the ALJ concluded that Bacoccini did not have an impairment or combination of impairments that met or medically equaled anything on the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 64.) The ALJ specifically considered Listings 12.04, 12.06, 12.08, and 12.10, and noted that Bacoccini experienced mild restrictions in activities of daily living, moderate difficulties with social functioning, and moderate difficulties with concentration, persistence, and pace. (AR 64.) The ALJ also noted that Bacoccini "experienced no episodes of decompensation, which have been of extended duration." (*Id.*)

At phase one of step four, the ALJ determined that Bacoccini had the RFC for the full range of work at all exertional levels subject to non-exertional limitations, including that the work involve simple instructions and simple tasks for up to two hours at a time. (AR 65.) Additionally, the work should not require a change in routine, should not be assembly line work, and should not require frequent interaction with the general public. (*Id.*)

Next, the ALJ discussed Bacoccini's education, behavioral challenges in the workplace, medications, and daily activities. (AR 66.) The ALJ then recited the opinion evidence from Drs. Kerlinsky, Emery, and Brown, and afforded "great weight to [Dr. Brown's] opinion, as it is consistent with the record as a whole." (AR 67.)

The ALJ then evaluated Bacoccini's credibility and concluded that her "subjective complaints are not consistent with or supported by the objective medical evidence." (AR 68.) To

support this conclusion, the ALJ noted that Bacoccini and Dr. Kerlinsky stated the medication relieves her symptoms and that Bacoccini can run a busy household with young children. (*Id.*) Lastly, the ALJ noted that Bacoccini has been on a "conservative" treatment regime and has not "undergone any inpatient psychiatric treatment." (*Id.*)

The ALJ then explained why she gave "no weight" to Dr. Kerlinsky's opinion. (*Id.*) She noted that "the course of treatment pursued by [Dr. Kerlinsky] has not been consistent with what one would expect if [Bacoccini] were truly disabled," and added that Dr. Kerlinsky's opinion was "without substantial support from other evidence of record . . . ." (*Id.*) Finally, the ALJ considered a jointly written lay statement from Bacoccini's mother and brother but discounted it because she believed it conflicted with the objective medical evidence. (AR 69.)

At phase two of step four, the ALJ determined that Bacoccini had no past relevant work. (*Id.*) At step five, the ALJ reviewed the vocational expert's hearing testimony about medium and light unskilled representative occupations and concluded that Bacoccini was not disabled because she was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (AR 70.) The Appeals Council declined to review the case, rendering the ALJ's decision the final decision of the Commissioner. (AR 1.)

## DISCUSSION

Bacoccini argues that the ALJ's RFC finding was contrary to both law and substantial evidence. Specifically, she argues that the ALJ erred by failing to apply the correct legal test when evaluating the medical opinions of Drs. Kerlinsky, Emery, and Brown, and that the vocational expert's testimony based on the RFC "does not provide substantial evidence to support the unfavorable decision." (Doc. 21 at 7.) The Commissioner responds that the ALJ reasonably considered both the record as a whole and the medical opinions. (Doc. 25 at 8.)

When evaluating the opinion of a treating physician, "the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must decide whether a treating doctor's opinion commands controlling weight by examining if the opinion "is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (applying SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996))). Even if a treating physician's opinion does not meet this standard, it may be entitled to deference under the second step, where the ALJ must determine the weight to accord the opinion by analyzing it against the factors provided in 20 C.F.R. §§ 404.1527(c) and 416.927(c). *Id.* The same factors are also used to analyze the opinions of nonexamining state agency physicians. *Id.* at §§ 404.1527(e), 416.927(e).

Here, the ALJ erred by failing to apply the two-step *Krauser* analysis to Dr. Kerlinsky's opinion. Addressing step one, the ALJ gave the opinion "no weight," but offered only a one sentence explanation: "the course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly disabled." (AR 68.) The ALJ neither elaborated further nor cited corroborating statements from Drs. Emery, Brown, or Hightower. As for step two, the ALJ failed to apply any of the CFR factors or reference other parts of her decision that may have been applicable. Instead, she offered only an unsupported conclusion and a few reiterations of the law. Each of these omissions—the failure to explain step one and the failure to apply the CFR factors in step two—constitute reversible legal error. *Krauser*, 638 F.3d at 1331.

## CONCLUSION

I conclude that the ALJ committed reversible error at the RFC stage by failing to assess Dr. Kerlinsky's opinion using the two-part *Krauser* test. Accordingly, I decline to rule on

7

Bacoccini's remaining claims, as re-assessing the opinion of treating psychiatrist Kerlinsky may adjust the ALJ's analysis. On remand, I direct the ALJ to apply the *Krauser* test to Dr. Kerlinsky's opinion and apply the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) to the opinions of the nonexamining state agency physicians. The case is remanded to the SSA for further proceedings consistent with this opinion.

 IT IS SO ORDERED.

*William P. Lynch*
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.